IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRETT and DANA WEINSTEIN, :
      Plaintiffs  : CIVIL ACTION
          : NO. 12-361
    v.      :
          :
J.P. MORGAN CHASE/CHASE :
FINANCIAL; ROBERT TATE;  :
GRANITE LOAN MANAGEMENT:
LLC; WILMINGTON TRUST, N.A.:
EQUIFAX CREDIT     :
INFORMATION SERVICES, INC.; :
EXPERIAN; TRANSUNION; and :
JOHN DOE,       :
      Defendants :
          :

**BRIEF IN SUPPORT OF MOTION OF GRANITE LOAN MANAGEMENT, LLC, TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT AS TO GRANITE, PURSUANT TO FED.R.CIV.P. 12 (b)**

## I. PROCEDURAL HISTORY

On March 9, 2012, Plaintiffs ("Weinstein" hereafter) filed a Consolidated Complaint in federal court, alleging violation of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.*, only against the three credit reporting agency Defendants (Consolidated Complaint, Count VI),[1] which credit agencies allegedly falsely reported negative credit information without providing a required statutory notice to Weinstein. Weinstein, in their Consolidated Complaint, bootstrapped to that "federal question" Count, numerous, supposedly "supplemental," Pennsylvania state law claims against the other named Defendants (*id.*, Counts I-V and VII-XI), including asserted Pennsylvania state law claims against Granite Loan Management, LLC ("Granite") for negligence (Count V); breach of fiduciary duty (Count IV); and violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count VII).

---

[1] The Defendants named in Count VI are Equifax, Experian, and Trans Union. (*Id.*)

Granite has moved to dismiss all of the Weinstein claims against it, on two bases: **First**, supplemental jurisdiction does not exist over the claims asserted against Granite, or, alternatively, such jurisdiction should not be exercised. **Second**, if supplemental jurisdiction exists, and the Court determines that it should be exercised, Weinstein, nonetheless, has failed to state a claim upon which relief can be granted against Granite.

## II. STATEMENT OF FACTS

As admitted by Weinstein, "the subject of this litigation" is a Construction Loan (Cons. Complaint, ¶19, second sentence) between Weinstein and JP Morgan Chase/Chase Financial ("Chase"), which is governed by a written Construction Loan Agreement between them (*id.*, ¶18). The Construction Loan Agreement, dated September 29, 2008, is attached to Weinstein's Complaint as Exhibit C. (*Id.*) In that Agreement, Weinstein is defined as "Borrower" and Chase as "Lender." (*Id.*, page 1.) The Loan amount was $1,572,830.00(Cons. Complaint Ex. D, HUD statement, Line 1600) and the loan money was to be used to construct a residence for Weinstein.

Unfortunately, in February, 2009, approximately five months after the closing on the Construction Loan, and after some disbursements had been made to the General Contractor named in the Construction Loan Agreement (Masterpiece Homes), that General Contractor "closed its doors without any notice or warning to [Weinstein] and subsequently filed for bankruptcy." (Cons. Complaint, ¶32.) Thereafter, Weinstein alleges that, despite their continuing timely payments to Chase under the Construction Loan Agreement, Chase (a) indicated it intended to foreclose on the Construction Loan (*id.*, ¶'s 47-53); and (b) without notification, issued negative reports to the three credit agency Defendants, "falsely indicating that [Weinstein] were behind on their mortgage payments" (*id.*, ¶53).

Weinstein has commenced the current "federal question" action against Granite and others, alleging that, as a result of the actions of the various Defendants, Weinstein has "suffered substantial economic harm in excess of $800,000.00." (Cons. Complaint, ¶'s 71, 79, 89, 96, 105, 114, & 127.)

Granite is a construction risk management company (Cons Comp. ¶45), offering services such as contractor review; project review; and fund control, including inspections and reporting, to lenders, such as Chase, among others (*id.*, Ex. G, top of first page). The Consolidated Complaint purports to set forth three (3) causes of action against Granite: Negligence (Count V); Breach of Fiduciary Duty (Count IV); and Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count VII). This, despite the fact that Granite is not a party to the underlying Construction Loan Agreement, Granite did not enter into any express or implied contract with Weinstein, and at all relevant times Granites was acting solely pursuant to a contract between itself and Chase.

With respect to the **Negligence Count (Count V)**, the gravamen appears at Paragraphs 110 and 111. Those Paragraphs are as follows:

> 110. Defendant Chase and/or Defendant [Granite] failed to properly inspect and investigate Mumper/Masterpiece Homes before issuing draws to Masterpiece in the amounts of $130,000.00 and $166,032.23. See Exhibit "E."

> 111. This failure to properly inspect and investigate constituted a failure to exercise reasonable care in evaluating Masterpiece and a failure to exercise reasonable [sic] in approving the draws, constituting a breach of the duty owed to Plaintiffs Weinstein.

(Cons. Complaint.)[2] As a result of the foregoing, Weinstein alleges that they have suffered "substantial economic harm in excess of $800,000.00." (*Id.*, ¶114.)

_____

[2] According to Weinstein, the two draws were negligently issued in September, 2008, and January, 2009. (Cons. Complaint, ¶28.)

As for the **Breach of Fiduciary Duty Count (Count IV)**, Weinstein alleges that:

(a) legally, a lender who exercises substantial control over the borrower's affairs stands in a fiduciary relationship to the borrower (*id.*, ¶99) (note, however, that Weinstein does not allege that Granite was a lender in the transaction at issue; Weinstein cannot allege that, because Chase was the lender);

(b) Weinstein's loan had $1,405.00 deducted from it, for payment of Granite (*id.*, ¶100) (the Construction Loan Agreement, at Section 6.3, expressly sets forth Weinstein's obligation to reimburse Chase for all or a portion of the fees and costs incurred by Chase in connection with the construction of improvements and other necessary and reasonable costs incurred by Chase);[3]

(c) Granite has a website on which it advertises its services (*id.*, ¶101); and

(d) Granite did not provide the services advertised on Granite's website in this instance (*id.*, ¶103). Weinstein concludes that the foregoing evidences a "contract" between Weinstein and Granite (*id.*, ¶102), amounting to a "fiduciary relationship," which Granite supposedly breached (*id.*, ¶98 & 104), resulting in "significant economic harm in excess of $800,000.00" (*id.*, ¶105).

Finally, the **Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law Count (Count VII)** includes the same allegations, as to Granite, as does the Count pertaining to supposed breach of fiduciary duty, and similarly, concludes by stating that

---

[3] Section 6.3 of the Construction Loan Agreement states: "At [Chase's] request [Weinstein] shall reimburse Lender for all, or a portion of the fees and costs incurred by [Chase] in connection with the construction of the Improvements on the Real Property, including (i) costs incurred in connection with periodic disbursement of loan proceeds during the construction period; (ii) costs incurred by [Chase] in inspecting its collateral during the construction period; and (iii) such other costs as may be necessary and reasonably incurred by [Chase] in connection with the construction of the Improvements."

Weinstein has suffered "substantial damages in excess of $800,000.00, plus interests [sic], attorney's fees and costs." (Cons. Complaint, ¶144.)

## III. QUESTIONS PRESENTED

1. Whether supplemental jurisdiction over the state law claims asserted against Granite exists, or, whether such jurisdiction should be exercised even if it does exist?

(Suggested Response: Negative.)

2. Whether Weinstein has stated a negligence claim against Granite?

(Suggested Response: Negative.)

3. Whether Weinstein has stated a breach of fiduciary duty claim against Granite?

(Suggested Response: Negative.)

4. Whether Weinstein has stated a claim for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law against Granite?

(Suggested Response: Negative.)

## IV. LEGAL ARGUMENT

### A. There is No Supplemental Jurisdiction over the Claims against Granite, or Alternatively, Supplemental Jurisdiction Should Not Be Exercised.

First, Weinstein pins jurisdiction in this case on the federal question presented by its claims against the three credit reporting agencies under the federal Fair Credit Reporting Act. (*See* Cons. Complaint, ¶10, *citing* 28 U.S.C. §1331.) Weinstein then asserts that the Pennsylvania state law claims against Granite (and all other Defendants, for that matter) fall within this Court's supplemental jurisdiction under Section 1367(a) of Title 28. (*Id.*, ¶11.) Granite disagrees with that latter assertion.

Section 1367(a) provides as follows, in pertinent part:

> [T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the original jurisdiction of the district courts] that they form part of the same case or controversy under Article III of the United States Constitution.

The test as to whether a state claim is part of the "same case or controversy" as a federal claim, within the meaning of Article III, in turn, is whether the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *Checkpoint Fluidic Systems International, Ltd. v. Guccione*, 2012 WL 195533 (E.D.La. Jan. 23, 2012), at *4; *Salei v. Boardwalk Regency Corporation*, 913 F.Supp. 993, 999 (E.D.Mich. 1996); *Glaziers and Glassworkers Union Local 252 Annuity Fund v. Newbridge Securities, Inc.*, 823 F.Supp. 1191, 1197 (E.D.Pa. 1993).

Here, the Pennsylvania state law claims against Granite do not "derive from a common nucleus of operative fact" as the federal claims against the three credit reporting agencies. *See generally* Wright & Miller, 13D *Federal Practice & Procedure* §3537 (the supplemental claim must be related to the federal jurisdictional claim such that the claims are part of the same constitutional case or controversy). In this regard, the case of *Salei v. Boardwalk Regency*, *supra*, is illustrative. In *Salei*, the Plaintiff alleged that the Defendant violated the Fair Credit Reporting Act by obtaining a copy of his credit report for an improper purpose and the Plaintiff sought to attach supplemental claims, under Michigan law, to the effect that the Defendant breached the terms of a settlement agreement of a prior Michigan state court case. In declining supplemental jurisdiction, the District Court explained as follows:

> At first glance, Plaintiff's state and federal claims appear to be related in a broad or causal sense. The entire relationship between the parties consists of Defendant's efforts to collect on a debt allegedly incurred when some of Plaintiff's checks were returned unpaid, and Plaintiff's subsequent attempts to force Defendant to take the steps Plaintiff believes are dictated by the settlement agreement between the

6

parties....

Moreover, accepting Defendant's version of events, the alleged FCRA violation occurred when Defendant obtained a copy of Plaintiff's credit report in order to better defend against Plaintiff's contempt motion in the prior Michigan suit. Consequently, the state and federal claims appear to be causally related; but for the alleged breach of a settlement agreement that forms the basis of Plaintiff's state claims, the alleged federal violation would not have occurred.

...

However, upon closer inspection, it is apparent that Plaintiff's state and federal claims do not share any of the same "operative facts." Put another way, the facts that are relevant to the resolution of Plaintiff's FCRA claim are completely separate and distinct from the facts that bear upon Plaintiff's state claims. The success of Plaintiff's FCRA claim depends not at all on whether Defendant breached a settlement agreement or violated a court order in the prior Michigan case. Rather, irrespective of whether the settlement agreement was breached, Plaintiff will prevail in his federal claim only if he can prove his allegation that Defendant obtained a copy of his credit report for an impermissible purpose. ....

Likewise, Plaintiff's state claims can be resolved without any consideration whatsoever of a possible FCRA violation. ... The determination whether Defendant failed to carry out its part of the settlement agreement in no way depends upon whether Defendant obtained a credit report, let alone whether securing such a report would constitute a FCRA violation....

*Salei*, 913 F.Supp. at 999.

The present case is akin to *Salei*. Specifically, the success of Weinstein's FCRA claim "depends not at all on whether" Granite breached a fiduciary duty, committed negligence, or otherwise violated a legal duty in allegedly failing to adequately supervise the builder, Mumper/Masterpiece Homes, or allegedly failing to adequately inspect the project before authorizing draws. "Rather, irrespective of whether [some legal duty] was breached [by Granite], [Weinstein] will prevail in his federal claim only if he can prove his allegation that" the Defendants (other than Granite) failed to ensure the accuracy of negative credit information reported to credit agencies and failed to provide timely notice of negative information to Weinstein.

Likewise, Weinstein's state law claims against Granite "can be resolved without any consideration whatsoever of a possible FCRA violation." In this regard, the "determination whether [Granite] failed to carry out" some legal duty to Weinstein, by failing allegedly adequately to supervise the builder, or the construction loan distribution process, "in no way depends upon [whether the other Defendants reported inaccurate information, or failed to give required notices of negative credit information, thereby violating the] FCRA." *See Salei, supra.*

In short, inasmuch as the state law claims against Granite and the FCRA claims against other Defendants do not derive from a common nucleus of operative fact, no supplemental jurisdiction exists over the state law claims against Granite.[4]

Finally, other considerations militate against accepting jurisdiction. First, Section 1367(c)(2) of Title 28 provides that a court may decline to exercise supplemental jurisdiction where the supplemental claim "substantially predominates over" the federal claim. In this case, it is obvious, from Weinstein's eleven-count Consolidated Complaint, that the state claims "substantially predominate"—all but Count VI, which itself involves only some of the Defendants, are state claims. Second, this case is at a relatively early stage and Weinsteins will not be prejudiced, as they will be free to pursue their alleged state claims in state court. *See generally Glaziers and Glassworkers Union Local 252, supra* (district court may exercise its discretion and take into consideration stage of proceedings and lack of prejudice, in declining supplemental jurisdiction).

---

[4] At best, the facts relating to the claims against Granite provide background leading up to the claim respecting the alleged violation, years later, by the other Defendants, of the FCRA. However, background facts are not "operative facts." *See Burgess v. Omar*, 345 F.Supp.2d 369, 370-372 (S.D.N.Y. 2004) ("more is required" than a showing that the facts relevant to one claim provide a background to the other).

For all of the foregoing reasons, the Consolidated Complaint should be dismissed as to Granite, based upon lack of supplemental jurisdiction, or alternatively, the Court should decline to exercise such jurisdiction over the claims against Granite.

**B. Weinstein Has Failed To State a Claim against Granite for Negligence.**

Under Pennsylvania law, a cause of action for negligence exists when the following elements are met: (a) there is a duty recognized by law, requiring a party to conform to a certain standard of conduct toward another, (b) there is a failure to conform to the standard of conduct, (c) which constitutes a breach of the duty, (d) the conduct is the proximate cause of injury, and (e) actual loss results. *Filter v. McCabe*, 733 A.2d 1274, 1276 (Pa.Super. 1999), *appeal denied*, 758 A.2d 1200 (Pa. 2000). In Count V of their Consolidated Complaint, the Weinsteins have not stated a negligence claim against Granite, for a number of reasons.

**1. No Duty.** Weinstein has pleaded no duty running from Granite to them. While the Weinsteins refer, in general, to the purported existence of a contract between Granite and themselves (Cons. Complaint, ¶102) and to an alleged "fiduciary relationship" between them (*id.*, ¶98 & 104), the facts supposedly supporting those conclusions (i.e, that there was a contract or a fiduciary relationship) are not sufficient to do so. Specifically, the Weinsteins' allegations that a contract was formed between themselves and Granite, because:

(a) Granite advertised its services on its website (Cons.Complaint, ¶101), and

(b) Defendant Chase or Tate "imposed that [the Weinsteins] pay a $1,405 fee

to [Granite]" at the construction loan closing (*id.*, ¶100),

are insufficient to support a reasonable inference that a contract or fiduciary relationship existed between the Weinsteins and Granite. Instead, those allegations just as easily (if not more easily), lead to the conclusion that Granite, **under its contract with Chase**, was acting as **Chase's** "Inspector" as that term is defined under the Construction Loan Agreement. In particular, the Weinstein's averment that Chase and/or Tate required that Weinsteins reimburse Chase for services performed by Granite, is consistent with Section 6.3 of the Construction Loan Agreement, which authorized Chase to require the Weinsteins to reimburse Chase for fees and costs incurred by Chase in connection with the construction.[5]

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court held that, to survive a motion to dismiss, a plaintiff must plead enough for a court to be able to draw a reasonable conclusion, from the facts pleaded, that an actual agreement existed, rather than some other equally plausible explanation for the conduct pleaded. 550 U.S. at 557 & 566. Here, since the Court could just as, or even more easily conclude, from the facts pleaded, that Granite was working as Chase's vendor, rather than that Granite had a contractual or fiduciary relationship with the Weinsteins, the Weinstein's conclusions to that effect are to be ignored.

Absent any contractual relationship between Weinstein and Granite, there is no legal duty running from Granite to Weinstein which has been set forth in the Consolidated Complaint. In fact, the Construction Loan Agreement explicitly disclaims any duty to Weinstein on the part of Chase's "Inspector" (i.e., Granite). That document says the following, in all capital letters, at Section 11.3.1:

---

[5] The truth is that Granite did have a contract with Chase—not Weinstein—to perform services for Chase's benefit and protection. Granite had nothing to do with whatever fees were imposed on Weinstein by Chase or how such items were shown on the HUD-1.

INSPECTIONS BY LENDER SHALL BE SOLELY FOR THE PURPOSE OF PROTECTING THE SECURITY FOR THE LOAN AND FOR THE LENDER'S BENEFIT ONLY. BORROWER ... SHALL NOT RELY ON LENDER'S INSPECTIONS FOR ANY PURPOSE AND HEREBY WAIVE ANY AND ALL CLAIMS AGAINST LENDER, ITS AGENTS, AND OTHER DESIGNATED REPRESENTATIVES RELATING TO, OR ARISING FROM, SUCH INSPEC-TIONS. ESTIMATES OF PERCENTAGES OF COMPLETION AS CONTEMPLA-TED IN THIS LOAN AGREEMENT ARE PERFORMED SOLELY FOR LENDER'S BENEFIT, AND LENDER, ITS AGENTS AND OTHER DESIGNATED REPRE-SENTATIVES ARE HEREBY HELD HARMLESS AND SHALL HAVE NO LIABILITY TO BORROWER .... BORROWER ... MAY ENGAGE THEIR OWN INSPECTOR(S) DURING THE COURSE OF THE CONSTRUCTION OF THE IMPROVEMENTS. LENDER IS THE ONLY INTENDED BENEFICIARY OF ANY AGREEMENT BETWEEN LENDER, ITS AGENTS AND OTHER DESIGNATED REPRESENTATIVE(S). LENDER'S AGENTS AND OTHER DESIGNATED REPRESENTATIVES ARE INTENDED BENEFICIARIES OF THIS SECTION OF THIS LOAN AGREEMENT.

**2. Economic Loss Rule.** Despite the foregoing, if the Court were to hold that the Weinsteins have adequately alleged a duty running from Granite to themselves, the Weinsteins' negligence Count nonetheless would have to be dismissed. Specifically, the economic loss rule "provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage." *Rentzell v. Dollar Tree Stores, Inc.*, 2011 WL 4528367 (E.D.Pa. 2011), at *2 (dismissing a negligence claim on a Rule 12(b)(6) motion, on the basis of the economic loss doctrine), *citing Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir. 2008). Here, the Weinsteins have alleged no physical injury or property damage resulting from the alleged breaches of a standard of care by Granite, but rather, have alleged only that they have suffered "substantial economic harm in excess of $800,000.00." For this reason as well, the Weinstein's negligence Count must be dismissed. *See generally American Stores Properties, Inc. v. Spotts, Stevens & McCoy, Inc.*, 648 F.Supp.2d 707 (E.D.Pa. 2009)(granting motion to dismiss for failure to state a claim, based upon economic loss doctrine, as to claim of negligent inspection during construction).

**3. Statute of Limitations.** Pennsylvania's Judicial Code provides that negligence actions must be commenced within two years. 42 Pa.Con.Stat.Ann.§5524(7) (Purdon's Supp. 2012). The two years begins to run when the supposedly negligent acts are committed. *See Montanya v. McGonegal*, 757 A.2d 947 (Pa.Super. 2000).

In the present case, the Weinsteins allege that, in 2008 and through late January, 2009, Granite supposedly breached a duty to adequately supervise the home builder and the construction loan distribution process. (Cons.Complaint, ¶'s 110-114.) Because the Weinsteins did not commence suit against Granite until 2012, their negligence action is barred by the statute of limitations.

For all of the foregoing reasons, Count V of the Consolidated Complaint should be dismissed.

## C. Weinstein Has Failed To State a Claim against Granite for Breach of Fiduciary Duty.

For essentially the same reason as set forth with respect to Weinstein's negligence Count—no duty—the Count for breach of fiduciary duty must be dismissed for failure to state a claim.

While Weinstein alleges, at Paragraph 99 of their Consolidated Complaint, that a fiduciary duty between a lender and borrower can be created where the lender "exercises substantial control over the borrower's business affairs," the Weinsteins nowhere have alleged that Granite was a "lender" to them, let alone that Granite exercised any control whatsoever. In fact, the Construction Loan Agreement, and the Weinsteins' other allegations, show that **Defendant Chase**—not Granite—was the "lender" in this case (*see* Construction Loan Agreement, at Page 1). Granite, for its part, was merely the inspector for Chase.

In Paragraph 11.3.1 of the Loan Agreement, Weinstein agreed that Granite, as Chase's Inspector, had no duty whatsoever to them, and that Weinstein waived "any and all claims" against Granite "relating to, or arising from," Granite's inspections:

> INSPECTIONS BY LENDER SHALL BE SOLELY FOR THE PURPOSE OF PROTECTING THE SECURITY FOR THE LOAN AND FOR THE LENDER'S BENEFIT ONLY. BORROWER … SHALL NOT RELY ON LENDER'S INSPECTIONS FOR ANY PURPOSE AND HEREBY WAIVE ANY AND ALL CLAIMS AGAINST LENDER, ITS AGENTS, AND OTHER DESIGNATED REPRESENTATIVES RELATING TO, OR ARISING FROM, SUCH INSPEC- TIONS. ESTIMATES OF PERCENTAGES OF COMPLETION AS CONTEMPLA- TED IN THIS LOAN AGREEMENT ARE PERFORMED SOLELY FOR LENDER'S BENEFIT, AND LENDER, ITS AGENTS AND OTHER DESIGNATED REPRE- SENTATIVES ARE HEREBY HELD HARMLESS AND SHALL HAVE NO LIABILITY TO BORROWER …. BORROWER … MAY ENGAGE THEIR OWN INSPECTOR(S) DURING THE COURSE OF THE CONSTRUCTION OF THE IMPROVEMENTS. LENDER IS THE ONLY INTENDED BENEFICIARY OF ANY AGREEMENT BETWEEN LENDER, ITS AGENTS AND OTHER DESIGNATED REPRESENTATIVE(S). LENDER'S AGENTS AND OTHER DESIGNATED REPRESENTATIVES ARE INTENDED BENEFICIARIES OF THIS SECTION OF THIS LOAN AGREEMENT.

The breach of fiduciary duty Count should be dismissed, as the Consolidated Complaint not only fails to set forth any fiduciary duty running from Granite to Weinstein, it actually suggests strongly that Weinstein has expressly acknowledged in writing that no such duty exists and that any and "any and all claims" against Granite were waived.

### D. Weinstein Has Failed To State a Claim under the UTPCPL.

Again, no duty ran from Granite to Weinstein merely as a result of the existence of Granite's website, or due to the fact that Chase exercised its own rights under the Construction Loan Agreement and required reimbursement to Chase of some of Granite's fees. Additionally, UTPCPL claims not involving property damage or personal injury are also barred by the economic loss rule, and Weinstein in this case alleges only economic loss. *See Wulf v. Bank of*

*America, N.A.*, 798 F.Supp.2d 586, 594-598 (E.D.Pa. 2011); *Ferki v. Wells Fargo Bank,* 2010 WL 5174406 (E.D.Pa. 2010).

## V. CONCLUSION

Based upon all of the foregoing, Granite respectfully requests that the Consolidated Complaint be dismissed as to Granite.

Dated: 4/16/12

Of Counsel

Beckley & Madden
212 North Third Street
P.O. Box 11998
Harrisburg, PA 17108
(717) 233-7691

Respectfully submitted,

_____
John G. Milakovic

_____
Charles O. Beckley, II

Attorneys for Granite