IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRETT and DANA WEINSTEIN | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO:  12-361 |
| JP MORGAN CHASE/CHASE | : | |
| FINANCIAL, et al. | : | |

## ORDER

AND NOW, this                     day of                                         , 2012, upon consideration

of Defendant Wilmington Trust's Motion to Dismiss Plaintiffs' Consolidated Complaint, and

Plaintiffs' Opposition thereto, IT IS HEREBY ORDERED that said Motion is DENIED.  IT IS

FURTHER ORDERED that Defendant Wilmington Trust shall file an Answer to said Complaint

within thirty (30) days of the date of this Order.

BY THE COURT:

_____

**HON C. DARNELL JONES, II, J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRETT and DANA WEINSTEIN　　　　　　:
　　　　　　　　　　　　　　　　　　　:　　CIVIL ACTION
　　　　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:　　NO:  12-361
JP MORGAN CHASE/CHASE　　　　　　　:
FINANCIAL, et al.　　　　　　　　　　　:


## PLAINTIFFFS' OPPOSITION TO DEFENDANT WILMINGTON TRUST'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

Plaintiffs, Brett and Dana Weinstein, by and through their undersigned counsel, hereby

moves this Honorable Court to deny the Motion to Dismiss of Wilmington Trust, and grant such

other relief as this Court deems just equitable.  In support thereof, Plaintiffs submit the annexed

Memorandum of Law.

WHEREFORE, Plaintiffs respectfully request this Court DENY the Motion to Dismiss

and enter the proposed Order.

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　By:　　　_____

　　　　　　　　　　　　　　　　**DAVID T. SHULICK, ESQUIRE**
　　　　　　　　　　　　　　　　**DANA K. COYNE, ESQUIRE**
　　　　　　　　　　　　　　　　**SHULICK LAW OFFICES**
　　　　　　　　　　　　　　　　Two Logan Square, Suite 1900
　　　　　　　　　　　　　　　　100 N. 18th Street
　　　　　　　　　　　　　　　　Philadelphia, PA  19103
　　　　　　　　　　　　　　　　(215) 988-5488
　　　　　　　　　　　　　　　　david@shulicklaw.com
　　　　　　　　　　　　　　　　dcoyne@shulicklaw.com

Dated: 4/30/12

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRETT and DANA WEINSTEIN | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO: 12-361 |
| JP MORGAN CHASE/CHASE | : | |
| FINANCIAL, et al. | : | |

### PLAINTIFFFS' MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANT WILMINGTON TRUST'S
### MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

Plaintiffs, Brett and Dana Weinstein, as husband and wife, hereby submit this Memorandum of Law in support of their Opposition to the Motion to Dismiss Plaintiffs' Consolidated Complaint filed by Defendant Wilmington Trust.

## I.      PROCEDURAL HISTORY

Plaintiffs commenced a Civil Action against Defendant JP Morgan Chase/Chase Financial by filing a Complaint in this matter on or about March 14, 2011 ("initial action"). On or about the Settlement Conference held in the initial action, Plaintiffs discovered information which had previously not been known to them, and while that action was on a Court-imposed stay, Plaintiffs investigated this new information. Through this investigation, Plaintiffs found that numerous other actors and entities were involved than were previously named as Defendants to the initial action.

Plaintiffs commenced this Action against Defendants JP Morgan Chase/Chase Financial, Robert Tate, Granite Loan Management, LLC, Wilmington Trust, N.A., Equifax Credit Information Services, Inc., Experian, Trans Union, and John Doe individual and/or entity on or

about January 24, 2012. Plaintiffs filed a Motion for Consolidation at that time, and an Order was entered on February 13, 2012 consolidating the initial action with this action. Pursuant to this Order, Plaintiffs filed a Consolidated Civil Action Complaint on March 9, 2012. A true and correct copy of Plaintiffs' Consolidated Complaint is attached hereto and incorporated herein as **Exhibit "A."**

## II.    FACTUAL BACKGROUND

Plaintiffs' cause of action arises from a Construction Loan Agreement entered between Plaintiffs and Defendant JP Morgan Chase on or around September 29, 2008. See Exhibit "A" at ¶¶ 18-19, 25. Plaintiffs secured this financing in order to construct their residential home in a planned unit development in Treddyffrin Township, Pennsylvania. See Exhibit "A" at ¶ 21. As part of the transaction between Plaintiffs and Defendant Chase, Defendant Chase approved builder Stephen Mumper of Masterpiece Homes (hereinafter "Mumper"), the general contractor involved in the building of all the homes in the development. See Exhibit "A" at ¶¶ 22-23.

Specifically, upon information and belief, as alleged by Defendant Granite Loan management (hereinafter "Granite") in its Motion to Dismiss, Defendant Chase retained Defendant Granite, a construction risk management company, for the purpose of controlling the construction loan funds and inspecting the building progress. See Motion to Dismiss at p. 10. Defendant Chase issued two (2) draws on Plaintiffs' construction loan, on September 16, 2008 and January 28, 2009, to Mumper. See Exhibit "A" at ¶ 28. These draws were issued despite the fact that the requisite work for which the funds were disbursed had not been completed by Mumper, and despite the fact that Defendant Granite had allegedly been overseeing the inspection of the construction at Plaintiffs' property. See Exhibit "A" at ¶¶ 29-31.

As set forth in Plaintiffs' Consolidated Complaint, after Defendant Chase improperly disbursed funds to Mumper, the builder suddenly closed its doors in or about February 2009, subsequently filing for bankruptcy. See Exhibit "A" at ¶ 32. As further pled by Plaintiffs, upon information and belief, Defendant Wilmington Trust (hereinafter "Wilmington") was the bank of Mumper. See Exhibit "A" at ¶ 33. Further, upon information and belief, after Mumper went out of business, Defendant Wilmington seized Mumper's account and used the funds, which were illegally and improperly drawn from Plaintiffs' construction loan, to pay Mumper's other outstanding obligations. See Exhibit "A" at ¶¶ 34-35. Despite the fact that Plaintiffs consistently made their loan payments in a timely fashion, Chase initiated foreclosure proceedings against Plaintiffs, and began reporting inaccurate information to the Credit Bureau Defendants. See Exhibit "A" at ¶¶ 53-55.

## III.    LEGAL STANDARD

A Complaint is properly dismissed for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) only where that Complaint fails to allege "enough facts to state a claim...that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). When evaluating a Rule 12(b)(6) motion, *the Court must accept all factual allegations as true*, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. Phillips v. County of Allegheny, 515 F.3d 224, 235 (3rd Cir. 2008); *see* Twombly, 127 S.Ct. 1955, 1969 n. 8 (2007) ("if, in view of what is alleged, it can reasonably be conceived that the plaintiffs ... could, upon a trial, establish a case which would entitle them to ... relief, the motion to dismiss should not have been granted") (internal citation omitted). Further,

***F.R.C.P. 12(b)(6) does not impose a probability requirement at the pleading stage***, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the allegations in the complaint. Phlilip*s*, 515 F.3d at 235.

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires **"a short and plain statement of the claim showing that the pleader is entitled to relief."** (emphasis added). Rule 8(a)(2) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949. The question is not whether the plaintiff will prevail in the end but whether the plaintiff is entitled to offer evidence in support of the claims. *See* Oatway v. American International Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003).

## IV.    ARGUMENT

### A.    Plaintiffs Have Stated a Valid Claim Under the Unfair Trade Practices and Consumer Protection Law Against Defendant Wilmington Trust

As set forth previously herein, as well as is pled in Plaintiffs' Consolidated Complaint, Defendant Granite was in a fiduciary relationship with Plaintiffs. Pennsylvania's Unfair Trade Practices and Consumer Protection Law (hereinafter "UTPCPL") defines "unfair or deceptive acts or practices" as including:

> (1)    causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
>
> (2)    causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;

(3)     engaging in any other fraudulent or deceptive conduct which creates a

likelihood of confusion or misunderstanding.

73 P.S. § 201-1(4).

The facts alleged by Plaintiffs in their Consolidated Complaint to support their claim of

breach of fiduciary duty against Defendant Wilmington are as follows:

a.     As part of the transaction by and between Plaintiffs and Defendants, Plaintiffs Weinstein paid Defendant Chase for a diligent search of Mumper/Masterpiece Homes before Masterpiece was approved by Defendant Chase.   Defendant Chase specifically and affirmatively approved Mumper/Masterpiece Homes as a qualified builder with qualified assets, experience and other related credentials.

b.     Defendant Chase represented that it would provide services to Plaintiffs Weinstein related to a builder approval and Construction Loan Agreement in that it would work in good faith with Plaintiffs pursuant thereto, before Plaintiffs provided thousands upon thousands of dollars of fees to Defendant Chase for said builder approval and related Construction Loan financing and services. However, Chase, upon information and belief intentionally deceived Plaintiffs to keep as much business flowing to Mumper, because Masterpiece and Mumper were liable and in debt to Defendant Chase, so Defendant Chase had at all relevant times and inherent and untenable conflict of interest between Plaintiffs, its own assets, and Masterpiece, Mumper's assets, which was not disclosed to Plaintiffs.

c.     The representations of Defendant Chase were false, deceptive, confusing and misleading, as follows:

(i)     Defendant Chase represented that no funds would be advanced on any loan agreement without respective, proportionate construction being completed.

(ii)    Chase failed to disclose that it had a separate and independent financial relationship with Steve Mumper of Masterpiece Homes, as it had significant additional exposure related to construction financing in the same "Highgrove" Development, including but not limited to other dealings with Mumper/Masterpiece Homes, having absolutely nothing to do whatsoever with Plaintiff Weinsteins. Further, Chase, upon information and belief intentionally deceived Plaintiffs to keep as much business flowing to Masterpiece, Mumper, because Masterpiece and Mumper were liable and in debt

to Chase, so Chase had at all relevant times and inherent and untenable conflict of interest between Plaintiffs, its own assets, and Masterpiece, Mumper's assets, which was not disclosed to Plaintiff

d.    Plaintiffs Weinstein relied upon the misrepresentations of Defendant Chase, which were made knowingly, or following the failure of Defendants to exercise due diligence to investigate the actions of Mumper/Masterpiece Homes.   Significantly, Chase had notice of the Masterpiece financial problems and never disclosed those to Weinstein. Attached hereto and incorporated herein as Exhibit "E" are copies of correspondences to and from the Architect, Michael Visich, showing how the Masterpiece initial payments to him 'bounced' and the checks were returned, and the Exhibit further proves that Masterpiece banked at Chase, and Chase had full access to Masterpiece's financials at all relevant times.

e.    Upon information and belief, Chase utilized $350,000.00 of the Weinsteins' funds improperly, merely to protect its own financial interests and not, to further the financial interests of Plaintiff Weinsteins who were relying upon Chase to approve Mumper/Masterpiece Homes and further, to ensure that the construction was completed proportionately to the release of the construction funds relating to the $150,000.00 draws.

f.    Additionally, upon information and belief, Defendant Tate of Defendant Chase satisfied a $175,000 lien to the seller of Plaintiffs' land, LeBoutillier Road Associates Acquisition Corporation.  Defendant Chase, by and through their agent, Defendant Tate, arranged, in conspiracy with LeBoutillier, the removal of a lien on Plaintiffs' land, and the re-imposition of a lien on Plaintiffs' land.

g.    In addition, Defendant Tate and/or Defendant Chase imposed that Plaintiffs pay a $1,405 fee to Defendant GLM, as reflected on line 806 of Plaintiffs Construction Loan Settlement Sheet.

h.    Defendant GLM touts itself as being the "industry expert in construction lending and fund control."   Defendant GLM's website indicates the following information to consumers:

> We are a full-service Construction Risk Mitigation Company offering services such as Contractor Review and Acceptance, Project Review and Approval, Fund Control including Inspections and Reporting as well as the forwarding of billing statements and collection of payments.
>
> With both new home origination and homeowner rehabilitation on the rise, construction lending represents

> explosive opportunities for growth. Construction loan gross yields are in excess of typical mortgage products, but without a solid fund control process in place, the risks represented can quickly debilitate even the most secure programs.
>
> GLM, through its Risk Mitigation System, offers lenders and private individuals the ideal way to oversee the fund control process without the burden of additional paperwork and excessive legal consultation. With unsurpassed policies and procedures, GLM takes the guesswork out of statutory lien law throughout every phase of the construction process. Through our in-house fund control department, we offer our clients web-based budget and draw status, quality inspections from Maine to Maui and all within established service standards.

i.      Defendant GLM fraudulently accepted the payment of fees from Plaintiff, while provided none of the construction loan management and fund control they allege to provide to consumers.

j.      Upon information and belief, Defendant Wilmington Trust was the bank of Mumper.  When Mumper/Masterpiece were issued the second draw from Plaintiffs' Construction Loan in January 2009, Defendant Mumper deposited these funds into his account with Defendant Wilmington Trust.

k.      Upon information and belief, after Mumper/Masterpiece went out of business, Defendant Wilmington Trust seized Mumper's account and used the funds which were illegally and improperly drawn from Plaintiffs' construction loan to pay Mumper/Masterpiece's other outstanding obligations, and these funds, drawn directly from Plaintiffs' construction loan, were not used against the balance of monies owed with regard to Plaintiffs' property.

l.      The representations of Defendants GLM, Tate, and Wilmington Trust were false, deceptive, confusing and misleading.

m.      As a result of the improper, fraudulent, and deceptive conduct of Defendants GLM, Tate, and Wilmington Trust, Plaintiffs Weinstein have suffered substantial damages in excess of $800,000.00, plus interests, attorney's fees, and costs.

See Exhibit "A" at ¶¶ 124-144.

As set forth in Plaintiffs' Consolidated Complaint, Defendant Wilmington was, upon information and belief, the bank of Mumper.  Further, as pled in Plaintiffs' Consolidated

Complaint, Defendant Wilmington seized the funds illegally and improperly drawn from Plaintiffs' construction loan, which had been placed in Mumper's account, using these funds to pay Mumper's other outstanding obligations, and using none of these funds for Plaintiffs' benefit. Such acts, pled with specificity in Plaintiffs' Consolidated Complaint, clearly fall within the fraudulent and deceptive conduct which is prohibited by Pennsylvania's UTPCPL. Accordingly, as Plaintiff has set forth a valid UTPCPL claim against Defendant Wilmington, the Motion to Dismiss must fail.

**B.      Plaintiffs Have Stated a Valid Claim for Unjust Enrichment Against Defendant Wilmington Trust**

Plaintiffs have sufficiently pled their claim for unjust enrichment against Defendant Wilmington.   In order to set forth a claim for unjust enrichment, as pled in Plaintiffs' Consolidated Complaint, the following elements must be alleged: (1) Benefits conferred on Defendant by Plaintiff; (2) Appreciation of such benefits by Defendant; and (3) Retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Baker v. Family Credit Counseling Corp., 440 F. Supp. 2d 392, 419 (E.D. Pa. 2006). Further, a claim of unjust enrichment simply requires that plaintiff "confer" benefits on a defendant; it does not require that plaintiff "directly confer" those benefits. Other courts have rejected the requirement that a plaintiff must directly confer a benefit on a defendant in order to allege unjust enrichment. Id. at 420.

Plaintiffs have alleged the following with regard to their unjust enrichment claim against Defendant Wilmington in their Consolidated Complaint:

> a.      In or about February 2009, approximately two (2) weeks after Mumper/Masterpiece had obtained the second draw of $166,032.23 from Plaintiffs' Construction Loan and had deposited these funds into the account held by Mumper at Defendant

Wilmington Trust, Mumper/Masterpiece suddenly went out of business.

b.     Upon information and belief, Defendant Wilmington Trust seized the funds in Mumper's account, which included $166,032.23 of funds directly from Plaintiffs, and used these funds toward Mumper's other outstanding obligations, without putting them toward the outstanding obligations owed by Mumper/Masterpiece related to Plaintiffs' property.

c.     Defendant Wilmington Trust has not returned and of these funds to Plaintiffs.

d.     Plaintiffs have conferred a benefit on Defendant Wilmington Trust by allowing Defendant to satisfy outstanding obligations of its customer, Mumper/Masterpiece.

e.     Said benefit has been appreciated by Defendant Wilmington Trust, as it has been able to satisfy obligations it would otherwise have been liable for by using Plaintiffs' funds which were improperly obtained by its customer, Mumper/Masterpiece.

f.     Defendant Wilmington Trust has retained the benefits conferred by Plaintiff, despite the fact that it is inequitable for Defendant to do so.

f.     Accordingly, Defendant has been unjustly enriched by retaining funds Mumper/Masterpiece obtained directly from Plaintiffs, without payment of value, to the detriment of Plaintiffs.

See Exhibit "A" at ¶¶ 145-154.

Plaintiffs' Consolidated Complaint alleges that Defendant Wilmington was, upon information and belief, the bank used by Mumper, and that Mumper deposited the funds which he had improperly and illegally drawn from Plaintiffs' construction loan proceeds into his account with Defendant Wilmington. Further, upon information and belief, as pled in Plaintiffs' Consolidated Complaint, Plaintiffs have conferred a benefit on Defendant Wilmington by allowing Defendant to satisfy outstanding obligations of its customer, Mumper, for which Defendant Wilmington would otherwise have been liable. None of these funds have been

returned to Plaintiffs.  Accordingly, construing these facts, as pled in Plaintiffs' Consolidated Complaint, in the light most favorable to Plaintiffs, Plaintiffs have set forth a valid claim for unjust enrichment against Defendant Wilmington, and the Motion to Dismiss must fail.

**C.     Plaintiffs Have Stated a Valid Claim for the Imposition of an Equitable Lien Against Defendant Wilmington Trust**

As previously stated herein, Plaintiffs have met their burden of establishing that Defendant Wilmington has been unjustly enriched, because they have set forth "a short and plain statement of the claim showing that the[y] ... [are] entitled to relief," which must then be construed in the light most favorable to Plaintiffs in the context of evaluating their Consolidated Complaint.  See F.R.C.P. 8; See also Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008).

Further, as pled in Plaintiffs' Consolidated Complaint, an equitable lien is a remedy "imposed to protect against and disgorge any unjust enrichment."  Harold ex rel. Harold v. McGann, 406 F.Supp. 2d 562, 579 (E.D.Pa. 2005).  Moreover, § 160 of the Restatement of Restitution states that "where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched an equitable lien arises."  See also Zions First Nat. Bank, N.A. v. United Health Club, Inc., 704 F.2d 120, 124 (2d Cir. 1983).

Plaintiffs, through their Consolidated Complaint, have alleged the following against Defendant Wilmington with regard to their equitable lien claim:

> a.      In or about February 2009, approximately two (2) weeks after Mumper/Masterpiece had obtained the second draw of $166,032.23 from Plaintiffs' Construction Loan and had deposited these funds into the account held by Mumper at Defendant Wilmington Trust, Mumper/Masterpiece suddenly went out of business.

b.      Upon information and belief, Defendant Wilmington Trust seized the funds in Mumper's account, which included $166,032.23 of funds directly from Plaintiffs, and used these funds toward Mumper's other outstanding obligations, without putting them toward the outstanding obligations owed by Mumper/Masterpiece related to Plaintiffs' property.

c.      Defendant Wilmington Trust has not returned and of these funds to Plaintiffs.

d.      An equitable lien is a remedy "imposed to protect against and disgorge any unjust enrichment."   Harold ex rel. Harold v. McGann, 406 F. Supp. 2d 562, 579 (E.D. Pa. 2005).

e.      Section 160 of the Restatement of Restitution states that "Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises."   § 160; See also Zions First Nat. Bank, N.A. v. United Health Club, Inc., 704 F.2d 120, 124 (3d Cir. 1983).

f.      Accordingly, Defendant Wilmington Trust has been unjustly enriched, and Plaintiffs are entitled to the imposition of an equitable lien upon the funds improperly held by Defendant Wilmington Trust.

See Exhibit "A" at ¶¶ 155-161.

Because Plaintiffs have stated a valid claim for unjust enrichment against Defendant Wilmington, and, further, because Plaintiffs have pled that the imposition of an equitable lien is necessary to remedy the unjust enrichment of Defendant Wilmington, the Motion to Dismiss must fail.

**D.      Plaintiffs Have Stated a Valid Claim for the Imposition of a Constructive Trust Against Defendant Wilmington Trust**

As pled in Plaintiffs' Consolidated Complaint, Pennsylvania courts recognize that a trust is "an equitable remedy," to be imposed "when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest … ." Louis Dolente & Sons v. U.S. Fid. & Guar. Corp., 252 F.Supp. 2d 178, 182 (E.D.Pa. 2003).

Further, this Court, applying the law of constructive trust in Pennsylvania, has held that the test

for imposing a constructive trust is "whether or not unjust enrichment can be avoided," and "if

the remedy of constructive trust can prevent unjust enrichment, it may be employed even though

the acquisition of the property was not wrongful and the Defendant's intention was not malign."

Id.

Plaintiffs, through their Consolidated Complaint, have alleged the following against

Defendant Wilmington with regard to their equitable lien claim:

a.      In or about February 2009, approximately two (2) weeks after
        Mumper/Masterpiece had obtained the second draw of
        $166,032.23 from Plaintiffs' Construction Loan and had deposited
        these funds into the account held by Mumper at Defendant
        Wilmington Trust, Mumper/Masterpiece suddenly went out of
        business.

b.      Upon information and belief, Defendant Wilmington Trust seized
        the funds in Mumper's account, which included $166,032.23 of
        funds directly from Plaintiffs, and used these funds toward
        Mumper's other outstanding obligations, without putting them
        toward the outstanding obligations owed by Mumper/Masterpiece
        related to Plaintiffs' property.

c.      Defendant Wilmington Trust has not returned and of these funds to
        Plaintiffs.

d.      Pennsylvania courts recognize that a constructive trust "is not
        really a trust at all but rather an equitable remedy." Louis Dolente
        & Sons v. U.S. Fid. & Guar. Corp., 252 F. Supp. 2d 178, 182 (E.D.
        Pa. 2003)

e.      The theory underlying the constructive trust doctrine is that
        "[w]hen property has been acquired in such circumstances that the
        holder of the legal title may not in good conscience retain the
        beneficial interest, equity converts him into a trustee." Id.
        168.     There is "no rigid standard for determining whether the
        facts of a particular case require a court of equity to impose a
        constructive trust; the test is whether or not unjust enrichment can
        thereby be avoided." Louis Dolente & Sons v. U.S. Fid. & Guar.
        Corp., 252 F. Supp. 2d 178, 182 (E.D. Pa. 2003). "Thus, courts
        have observed that, if the remedy of constructive trust can prevent

unjust enrichment, it may be employed even though the acquisition of the property was not wrongful and the defendant's intention was not malign." Id.

    f.     Plaintiffs have conferred a benefit on Defendant Wilmington Trust by allowing Defendant to satisfy outstanding obligations of its customer, Mumper/Masterpiece.

    g.     Said benefit has been appreciated by Defendant Wilmington Trust, as it has been able to satisfy obligations it would otherwise have been liable for by using Plaintiffs' funds which were improperly obtained by its customer, Mumper/Masterpiece.

    h.     Defendant Wilmington Trust has retained the benefits conferred by Plaintiff, despite the fact that it is inequitable for Defendant to do so.

    i.     Accordingly, Defendant has been unjustly enriched, and Plaintiffs are entitled to the imposition of a constructive trust on the funds improperly held by Defendant Wilmington Trust.

See Exhibit "A" at ¶¶ 162-172.

As set forth herein, Plaintiffs have established a claim for unjust enrichment against Defendant Wilmington. As pled in Plaintiffs' Consolidated Complaint, Defendant Wilmington obtained a benefit by virtue of the fact that Plaintiffs' construction loan proceeds were utilized to satisfy obligations for which Defendant Wilmington would ultimately have become liable. Accepting the factual allegations contained within Plaintiffs' Consolidated Complaint as true, and construing them in the light most favorable to Plaintiffs, a valid claim for the imposition of a constructive trust has been pled by Plaintiffs, and the Motion to Dismiss must fail.

    **E.**    **This Court has Jurisdiction over Defendant Wilmington Trust Pursuant to 28 U.S.C. § 1332.**

The law regarding jurisdiction by virtue of Diversity of Citizenship is as follows: "the district courts shall have original jurisdiction of all civil actions where the matter in controversy

exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332.

As alleged in Plaintiffs' Consolidated Complaint, Plaintiffs are citizens of the Commonwealth of Pennsylvania. See Exhibit "A" at ¶ 1. Defendant Wilmington is a citizen of the State of Delaware. See Exhibit "A" at ¶ 5. Plaintiffs have pled that their damages exceed $75,000. See Exhibit "A" at ¶¶ 13, 57. Applying the legal standard of Diversity Jurisdiction to the facts pled by Plaintiffs, which must be accepted as true and construed by the Court in the light most favorable to Plaintiffs, jurisdiction is vested in this Court, and the Motion to Dismiss must fail.

## V.    CONCLUSION

In order to prevail on their Motion to Dismiss pursuant to F.R.C.P 12(b)(6), Defendant Wilmington bears the burden of establishing that Plaintiffs have failed to set forth a claim upon which they are entitled to relief. However, Plaintiffs have established their pleading burden by setting forth, with particularity, the circumstances, facts, and law to support each of their claims against Defendant Wilmington. Furthermore, all facts alleged in Plaintiffs' Complaint must be accepted as true by the Court, and must be construed by the Court in the light most favorable to Plaintiffs. Because Plaintiffs have met this burden, Plaintiffs, Brett and Dana Weinstein, respectfully request that this Honorable Court deny Defendant's Motion to Dismiss, and grant such further relief as this Court deems just and equitable.

Respectfully submitted,

By: _____

**DAVID T. SHULICK, ESQUIRE**
**DANA K. COYNE, ESQUIRE**
**SHULICK LAW OFFICES**
Two Logan Square, Suite 1900
100 N. 18th Street
Philadelphia, PA  19103
(215) 988-5488
david@shulicklaw.com
dcoyne@shulicklaw.com

Dated: 4/30/12

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRETT and DANA WEINSTEIN   :
            :  **CIVIL ACTION**
     v.       :
            :  **NO:  12-361**
JP MORGAN CHASE/CHASE   :
FINANCIAL, et al.       :

## CERTIFICATE OF SERVICE

I HEREBY STATE THAT THE ANNEXED PLEADINGS WERE SERVED ON ALL COUNSEL OF RECORD AS OF THE DATE SET FORTH BELOW BY THE CM/ECF SYSTEM OF THE EASTERN DISTRICT OF PENNSYLVANIA, AS WELL AS BY U.S. MAIL, FIRST CLASS, POSTAGE PREPAID.

SHULICK LAW OFFICES

_____

DAVID T. SHULICK, ESQUIRE
Two Logan Square Suite 1900
Philadelphia PA 19103
(215) 988-5488
**david@shulicklaw.com**

**Attorneys for Plaintiffs**

Dated: 4/30/12