IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRETT WEINSTEIN and DANA WEINSTEIN, | : : : | CIVIL ACTION |
| Plaintiffs, | : : | NO. 12-361 |
| v. | : : | |
| JP MORGAN CHASE/CHASE FINANCIAL, | : : : | |
| Defendants. | : | |

**MEMORANDUM**

**Jones, II, J.**                                                                                             **May 8, 2013**

Plaintiffs Brett and Dana Weinstein brought this action, which arose out of a failed home construction loan. Plaintiff brought claims against Defendant J.P Morgan Chase/Chase Financial ("J.P Morgan"), Granite Loan Management LLC ("Granite"), and Wilmington Trust, N.A. "Wilmington"). Presently before the Court are the Motions to Dismiss of Defendants Granite (Dkt. No. 61) and Wilmington (Dkt. No. 63) and Plaintiffs' Opposition thereto (Dkt. No 67). For the reasons that follow, Defendants' Motions are granted.

**I.     LEGAL STANDARD**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "threadbare recitals of a cause of

action's elements, supported by mere conclusory statements" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the alleged misconduct." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("All civil complaints must contain more than an unadorned the-defendant-unlawfully-harmed-me accusation.") (quoting *Iqbal*, 556 U.S. at 677). Moreover, "the factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8 [of the Federal Rules of Civil Procedure]." *Villegas v. Weinstein & Riley*, *P.S.*, 723 F. Supp. 2d 755, 756 (M.D. Pa. 2010) (quoting *Phillips*, 515 F.3d at 232).

## II. FACTS

In December 2007, Plaintiffs Brett and Dana Weinstein, husband and wife, purchased a lot in the Highgrove Community in Tredyffrin Township, PA for $930,000, so that they could construct a new home on that lot. (Pl.'s Second Am. Compl. ¶¶ 1, 8-9). Masterpiece Homes ("Masterpiece") was tasked with building all of the homes in Highgrove. (*Id.* ¶9). To finance this project, Plaintiffs obtained a Construction Loan from Chase, who also financed the lot purchase. (*Id.* ¶12). Chase approved Masterpiece Homes and its owner, Stephen Mumper, as "qualified" builders, and pursuant to a Construction Agreement that Plaintiffs subsequently entered with Masterpiece, Plaintiffs agreed to pay Masterpiece an additional sum of $1,500,000 . (*Id.* ¶¶ 15-17). Chase hired Granite, a construction risk provider, to perform construction related services pursuant to the Construction Loan. (*Id.* ¶¶ 38-40, 101-05). In connection with the Construction Loan, Granite received a "fee" of $1,405.( *Id.* ¶ 94)  After making two "draws"

against the construction loan in late 2008 and early 2009, Masterpiece filed for bankruptcy in February 2009, leaving the project unfinished. (*Id.* ¶¶22-26). Wilmington, Masterpiece's bank, seized monies from Masterpiece's accounts, and used those funds to pay Masterpiece's outstanding debt obligations, unrelated to the construction project. (*Id.* ¶29). Following the bankruptcy filing of Masterpiece, Plaintiffs had to redesign their home with a new architect, and re-do some of the work that had already been completed on the project. (*Id.* ¶¶ 30-31).

Plaintiffs allege claims that Defendant Granite: 1) breached a fiduciary duty to Plaintiffs when it allegedly made false representations to Plaintiffs and accepted fees from Plaintiffs (Count V) (*Id.* ¶¶91-99); 2) was negligent in failing to properly "oversee and manage all construction funds", made negligent misrepresentations and "failed to properly inspect" Masterpiece before issuing draws to Masterpiece (Count VI) (*Id.* ¶¶101-08): and 3) violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count VII). (*Id.* ¶¶109-24).

With respect to Defendant Wilmington, Plaintiff alleges: 1) Wilmington violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count VII) (*Id.* ¶¶109-24): 2) Wilmington was unjustly enriched when it seized funds in Stephen Mumper's bank accounts "without putting them toward the outstanding obligations owed by Mumper/Masterpiece related to Plaintiffs' property" (Count VIII) (*Id.* ¶¶125-34); 3) Plaintiffs are entitled to an equitable lien on the funds held by Wilmington related to the alleged unjust enrichment (Count IX) (*Id.* ¶¶135-41); and 4) Plaintiffs are entitled to a constructive trust on the funds held by Wilmington (Count X) (*Id.* ¶¶142-52).

## III. DISCUSSION

### 1. Procedural Issues

Defendant Granite moves to dismiss the Consolidated Amended Complaint on the grounds that this Court lacks diversity jurisdiction because the original Consolidated Complaint included a non-diverse party—Robert Tait—who was never removed from the case via an order pursuant to Rule 21 of the Federal Rules of Civil Procedure. Any jurisdictional defect, however, was cured as a result of Plaintiffs' filing of the Consolidated Amended Complaint. In the Court's July 30, 2012 Order, the Court granted Plaintiff leave to amend its complaint to address the potential jurisdictional defect caused by Defendant Tait. Plaintiffs subsequently filed an amended complaint pursuant to the Court's direction, removing any reference to Defendant Tait, and thus preserving diversity jurisdiction. Plaintiffs' amended filing properly removed Defendant Tait and nothing here suggests that he was an otherwise indispensable party to this matter or that Defendants are prejudiced by his dismissal. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 835 (1989); *see also Nam Soon Jeon v. Island Colony Partners*, 892 F. Supp. 2d 1234, 1236 (D. Haw. 2012) (granting leave to file amended complaint omitting "nondiverse dispensable party" so that Plaintiff could cure jurisdictional defect). As such, this matter is properly before the Court.

### 2. Claims Against Defendant Granite

Plaintiffs have failed to state a claim for negligence on behalf of Defendant Granite, as their Amended Complaint fails to allege a duty owed from Granite to Plaintiff. According to Plaintiffs, this duty is borne by contract, to wit, the Construction Agreement signed between Plaintiffs and Chase, or a fiduciary relationship created by an implied contract between Plaintiffs and Granite.

Plaintiffs' arguments regarding the purported fiduciary duty are ambiguous at best. Plaintiffs refer to the "formation of a contract" between the two parties, but it is unclear to what Plaintiffs believe the "contract" is. (Pl.'s Second Am. Compl. ¶ 96). The only express contract at issue in this matter is the Construction Agreement between Plaintiffs and Chase, to which Defendant Granite is not a signatory and merely acts as a service provider to Chase. Plaintiffs do not allege that any contract was entered into between Granite and Plaintiffs.[1] To the extent that Plaintiffs believe that the Construction Agreement created a duty running from Granite to Plaintiff, this argument likewise fails. Plaintiffs have cited no case and have alleged no facts to show the existence of a fiduciary duty between the two parties created by the Construction Agreement.

In an attempt to create a fiduciary relationship where none exists, Plaintiffs rely on several cases for the proposition that a "fiduciary duty is created *by a lender* where lender exercises substantial control over the borrower's business affairs." (*Id.* ¶ 96 citing *Busy Bee, Inc. v. Wachovia Bank, N.A.*, 97 CV 5078, 2006 WL 723487 (Pa. Com. Pl. Feb. 28, 2006) *aff'd sub nom. Busy Bee v. Wachovia Bank,* 932 A.2d 248 (Pa. Super. Ct. 2007)) (emphasis added). Nowhere in Plaintiffs' Complaint, however, are any facts alleged supporting the conclusion that Defendant Granite is in fact a lender, let alone an entity that "exercise[d] substantial control" over Plaintiffs' affairs. It appears that Granite was not a lender, but merely a service provider to Chase under the Construction Agreement.[2]

---

[1] Plaintiffs admit in their opposition that "Defendant Granite is not named in the construction loan agreement." (Pl.'s Opp. ¶27).

[2] Plaintiffs allege that "Defendant Granite (or Chase)" "failed to properly inspect and investigate Masterpiece" before issuing draws to Masterpiece. Plaintiffs have alleged no facts indicating that Granite was responsible for issuing any such draws.

Even if Plaintiffs intend that the "formation of the contract" was not the Construction Agreement, but instead an *implied* contract between Granite and Plaintiffs, that argument likewise fails. Plaintiffs allege that a fiduciary duty was created via representations made on Granite's website, in which Granite "touts itself as being the 'industry expert in construction lending and fund control.'" (Pl.'s Second Am. Compl. ¶39, 95). Plaintiffs alleges that Granite "fraudulently accepted payment of fees from Plaintiff" in contravention of the website's claims. (*Id.* ¶40, 97). Plaintiffs allege that "[Granite] the representations made to Plaintiffs were grossly negligent, and/or false." (*Id.* ¶96). Belying Plaintiffs' argument is Plaintiffs' admission in their Opposition they "***did not know of the existence of Defendant Granite . . . until the court-ordered settlement conference held in this action***." (Pl.'s Opp. 24)(emphasis added). If Plaintiffs did not even know of Granite until they filed this action, it is inconceivable that any implied contract was created between the two parties. If Plaintiffs intend to argue that they relied on the website before entering the express contract with Chase, it is similarly inconceivable that Plaintiffs relied upon a website that they did not even know existed at the time they signed the Construction Agreement.

Because the existence of a duty is a prerequisite to Plaintiffs' three claims against Granite (breach of fiduciary duty, negligence, and UTPCPL), and Plaintiff has failed to plead the existence thereof, the Motion to Dismiss of Defendant Granite must be granted because Plaintiffs Consolidated Amended Complaint fails to state a claim upon which relief can be granted. As such, Counts V, VI, and VII are dismissed with prejudice as to Defendant Granite.

### 3. Claims Against Defendant Wilmington

a. Violations of the Pennsylvania Unfair Trade Practices Consumer Protection Law

Plaintiffs claim that Wilmington violated the Pennsylvania Unfair Trade Practices Consumer Protection Law (UTPCPL) when it engaged in "false, deceptive, confusing and misleading" practices." (Pl.'s Second Am. Compl. ¶ 109-11, 123.[3]  Defendant Wilmington argues that Plaintiffs complaint is not pleaded with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure and that Plaintiff also has not alleged that Wilmington "engaged in deceptive conduct and that Plaintiffs suffered an ascertainable loss due to reliance on the deceptive conduct" as is required under the UTPCPL.  *See Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 548 (E.D. Pa. 2012) ("Deceptive conduct under the catch-all provision 'is defined as intentional misleading by falsehood spoken or acted. An act or practice is deceptive or unfair if it has the capacity or tendency to deceive.'")(citations omitted).  Wilmington is correct. Even though the "UTPCPL is to be liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices." *Ash v. Continental Ins. Co.,* 593 Pa. 523, 932 A.2d 877, 881 (Pa.2007), Plaintiffs simply provide no factual basis for their claim, merely reciting the elements of a UTPCPL "catch all" claim. *Twombly,* 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do.")  Viewing all facts in a light most favorable to Plaintiff, Defendants' Motions to Dismiss should be granted as to Count VII with prejudice.

b) Unjust Enrichment

A plaintiff who claims unjust enrichment must "'show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider.' " *Bair v. Purcell,* 500 F.Supp.2d 468, 499 (M.D.Pa.2007) (quoting *Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828

---

[3] Plaintiffs do not identify the specific section of the UTPCPL allegedly violated by Wilmington, only citing numerous portions of 73 P.S. § 201-2(4).

F.2d 989, 999 (3d Cir.1987)). In Pennsylvania, a plaintiff must allege that "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Kliesh v. Select Portfolio Servicing, Inc.,* No. 12–548, 2012 WL 2500973, at *8 (E.D.Pa. June 29, 2012) (citations omitted).

Plaintiff has failed to allege the first prong—that a benefit was conferred upon defendant Wilmington. Plaintiffs allege that "Defendant Wilmington Trust seized the funds in Mumper's account… and used these funds toward Mumper's other outstanding obligations, without putting them toward the outstanding obligations owed by Mumper/Masterpiece related to Plaintiffs' property" (Pl.'s Second Am. Compl. ¶127). Defendant Wilmington is correct in asserting that Plaintiffs' unjust enrichment claim "fails as a matter of law because Wilmington Trust has never been unjustly enriched." (Def. Mot. Dismiss 7). The blanket allegation that a benefit has been conferred upon Wilmington is far too attenuated to survive a motion to dismiss. Mumper/Masterpiece received the "benefit" of Plaintiffs' funds—not Wilmington. Plaintiffs' allegations of unjust enrichment are insufficient as pleaded and accordingly, Count VIII of Plaintiffs claim will be dismissed with prejudice.

    c) Equitable Lien and Constructive Trust

Because an equitable lien and a constructive trust are equitable remedies in instances when a party has been unjustly enriched, and because Plaintiff has not adequately alleged that Defendant Wilmington has been unjustly enriched, Plaintiffs equitable claims cannot stand *See Harold ex rel. Harold v. McGann*, 406 F. Supp. 2d 562, 579 (E.D. Pa. 2005) (equitable lien is remedy "imposed to protect against and disgorge any unjust enrichment."); *Patrick & Wilkins*

*Co. v. Reliance Ins. Co.,* 500 Pa. 399, 456 A.2d 1348, 1351 (Pa.1983) ("[A] constructive trust is not a trust in the ordinary sense of the term but simply an equitable remedy designed to prevent unjust enrichment.") Accordingly, Plaintiffs' equitable lien (Count IX) and constructive trust (Count X) claims are dismissed with prejudice.

For the above stated reasons, Defendants' motions to dismiss the Second Amended Complaint will be granted.

An appropriate order follows.